**SO ORDERED.**

**SIGNED this 17 day of November, 2005.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KEVIN S. STEELE, | ) | Case No. 03-13393 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| J. MICHAEL MORRIS, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 04-5265 |
| | ) | |
| KEVIN S. STEELE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

J. Michael Morris, trustee of Kevin Steele's bankruptcy estate, filed this adversary proceeding to recover a portion of Steele's 2003 federal and state income tax refunds. Steele filed

1

his bankruptcy case on June 24, 2003, the 175th day of 2003. The trustee calculates that the estate's interest in the refunds (that part earned prior to the petition date) is 175/365, or 47.9452 per cent. The trustee requests judgment against the debtor in this amount and a revocation of the debtor's discharge if he fails to pay it.

The Court called this matter for trial on August 16, 2005. At that time, counsel appeared and represented that the case could be submitted on the exhibits[1] and stipulations contained in the final pretrial order.[2] After hearing argument, the Court took the matter under advisement.

Jurisdiction

This adversary proceeding is a core proceeding over which the Court has jurisdiction.[3]

Findings of Fact

Steele filed his federal and state income tax returns and was entitled to a federal refund of $2,760 and a state refund of $684 for a total gross refund amount of $3,444.[4] After Steele filed his 2003 returns, the Internal Revenue Service set off a portion of his federal return to pay Steele's prepetition state court child support obligation. Child support obligations are nearly always nondischargeable. The setoff was for $1,122.[5] The State of Kansas likewise set off $587 of Steele's

---

[1] The Court received by stipulation Trustee's Exhibits 1-7 and Debtor's Exhibits A-H.

[2] Dkt. 12.

[3] *See* 28 U.S.C. § 157(b)(1) and (b)(2)(E) and (J) and 28 U.S.C. § 1334(b).

[4] *See* Trustee's Ex. 1 and 2. Even though Steele's federal return shows a refund of $4,706 (Ex. 1), the parties stipulate that the actual federal refund was $2,760 due to a recalculation of the tax liability as evidenced by the IRS transcript obtained by the debtor. *See* Debtor's Ex. C. There is nothing in the record to indicate that the debtor's state tax liability or refund was similarly recalculated.

[5] Debtor's Ex. D.

2

state tax refund for the child support obligation, but eventually refunded $487 of that setoff back to him.[6]  The debtor paid the $487 over to the trustee.[7]

Thus, debtor's gross federal refund was $2,760 and his gross state refund was $587 for a total gross refund of $3,347.[8]  Applying the percentage factor of 47.9452 to the gross refund under the trustee's argument, the estate's share of the refunds amounts to $1,604.73.  The debtor argues that he should only be liable to the estate for 47.9452 per cent of the net refund (*i.e.* what remained of the tax refunds after the child support set off), or $1,018.84  [(($2,760 - $1122) + ($587 - $587 + $487)) X .479452 = $1,018.84].

The stipulations refer to Steele's obtaining a Refund Anticipation Loan (RAL) of $1,638, the balance of his federal refund after the set off.  They also state that Steele only received $1,513 in net proceeds of the loan after deduction of $125 in costs.  The Court considers that the costs incurred were for Steele's benefit, that he should not receive a credit for them and that  Steele has received his entire 2003 federal refund.

Analysis

This adversary proceeding presents the issue of how to allocate a tax refund between the bankruptcy estate and the debtor where the government has setoff a portion of the tax refund to pay a prepetition child support obligation.

---

[6] *See* Debtor's Ex. E and F.

[7] Trustee's Ex. 4.

[8] Even though the state tax return reflects a refund of $684, the trustee indicated that he was giving the debtor the benefit of the doubt and applied the percentage to the amount originally  setoff, $587.  The Court will adopt the trustee's figure of $587 as the amount of the state refund.  Since the State later returned $487 of the previous setoff, the net effect was a $100 setoff of the state tax refund.

The trustee argues that the estate is entitled to the application of the equitable doctrine of marshaling and that the debtor's creditors should not bear the entire burden of the set offs. The equitable doctrine of marshaling requires that "three elements must be found in order for a court of equity to invoke the marshaling doctrine: (1) existence of two creditors with a common debtor; (2) the existence of two funds belonging to the debtor; and (3) the legal right of one creditor to satisfy his demand from either of the funds, while the other may resort to only one fund."[9]

The trustee argues that the child support creditor would have recourse not only to Steele's bankruptcy estate, but also against Steele's post-petition property, while Steele's other creditors only have a claim against estate assets. In other words, Steele should not benefit at the expense of his pre-petition creditors from the IRS's arbitrary set off. As the United States Supreme Court has said of the doctrine of marshaling, "[i]ts purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security. It deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all of the parties."[10] While we do not deal here with the interests of lienholders, if the debtor's argument prevailed, the rights of his pre-petition creditors would be adversely affected. Steele would retain the difference between the $1,604 the trustee demands and the $1,018 Steele concedes, or $586 that would have been otherwise available to his creditors.

Steele responds that, because the set off was beyond his control, he should only have to account to the estate for 47.9452 per cent of the net refunds after the set off. He makes two other

---

[9] *Morris v. Jack B. Muir Irrevocable Trust (In re Muir)*, 89 B.R. 157, 160 (Bankr. D. Kan. 1988).

[10] *Meyer v. U. S.*, 375 U.S. 233, 237 (1963).

points in further opposition to the trustee's complaint. He first notes the relatively small amount of money involved and second, he stresses that he had few creditors to begin with. In fact, only one claim has been filed in this estate in the amount of $250.01. The bar period has expired. Thus, if the Court orders Steele to pay in the entire $1,604, a substantial surplus will remain, even after the trustee's fees and expenses are paid. But whether this is a practical result should not deter the Court from deciding what the controlling legal principles in this case are. It falls to the Court to determine the underlying legal issue, leaving to the parties the decision whether to abide by that determination or resolve their differences in some other fashion.

In short, neither the de minimis nature of this particular dispute nor its practicalities excuse this Court from determining that the doctrine of marshaling should be employed here to effectuate a fair and equitable allocation of the refund and the burden to repay it to the estate. Because he has benefitted from the set off and application of $1,222 of his tax refund to a debt that could have been collected from him post-discharge, Steele should pay back to the estate the entirety of its share of the refund, $1,604 as though there had been no offset. Because his child support debt has been paid, and because there is only one small claim filed in the case, Steele may receive surplus funds when the case is closed. The Court further concludes that because Steele has previously paid $487 of the refund to the trustee, his liability to the estate should be reduced by this amount, leaving a total of $1,117 ($1,604 - $487) of the tax refunds due and owing.

The trustee also seeks to revoke Steele's discharge. Section 727(d)(3) provides that a debtor's discharge shall be revoked upon request of the trustee when the debtor has refused to obey a lawful order of the Court per § 727(a)(6)(A). The only order entered by the Court in this case that exposes Steele to revocation of his discharge is the order granting the trustee's motion to compel

5

production of the 2003 tax returns.

The trustee filed a motion to compel production of the 2003 tax returns on June 7, 2004.[11] On July 6, 2004, this Court ordered Mr. Steele to provide his 2003 returns and imposed a $200 sanction.[12] That same day, the trustee moved for turnover of the debtor's refund.[13] The debtor filed an objection to the turnover motion contesting the amount of the refund sought by the trustee and this adversary proceeding ensued. The record indicates that Mr. Steele did in fact turnover the returns, but that the set off intervened, preventing him from repaying some of the refunds to the trustee. It appears that the trustee and debtor's counsel communicated at length about the extent of Steele's liability to the estate. The record does not, however, suggest the Steele "refused" to comply with the July 6 Order compelling Steele to provide his returns. Thus, the judgment in this case will indicate that Steele's discharge will only be revoked if he refuses to pay the $1,117 within six months from the date of its entry or make such other arrangements as may be acceptable to the trustee.

A Judgment on Decision will issue this day.

# # #

---

[11] Dkt. 14. Steele did not object to the motion to compel.

[12] Dkt. 16.

[13] Dkt. 17. It is apparent to the Court from the timing of the trustee's turnover motion that the debtor had provided his 2003 tax returns by the time the Court entered its Order granting the motion to compel on July 6, 2004. The Court is satisfied that debtor provided his tax returns on or about July 2, 2004, before the order was entered. *See* Debtor's Ex. H.

6

Case 04-05265    Doc# 18    Filed 11/17/05    Page 6 of 7

7